UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT E. MILLER, JR.,

                        Plaintiff,

    -against-                                      1:12-CV-0874 (LEK/CFH)

PAUL G. MADISON,

                        Defendant.

_____

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This is an action for breach of contract. See Dkt. No. 6 ("Amended Complaint") ¶ 16. Currently before the Court are several Motions filed by *pro se* Plaintiff Robert E. Miller, Jr. ("Plaintiff"), and *pro se* Defendant Paul G. Madison ("Defendant"). Plaintiff, who has been granted leave to proceed with this action *in forma pauperis*, has filed: (1) a Motion for default judgment; (2) a Letter Motion requesting a writ of execution on that default judgment; and (3) a Letter Motion requesting a "receipt and accounting" of security Plaintiff allegedly submitted to the Court. Dkt. Nos. 4; 15-16; 33 ("Motion for Accounting"). Defendant, an attorney, has filed: (1) a Cross-Motion to dismiss Plaintiff's Amended Complaint and in opposition to Plaintiff's Motion for default judgment; and (2) a Letter Motion to stay Plaintiff's Motion for a writ of execution pending resolution of the Cross-Motion. Dkt. Nos. 17 ("Motion to Stay"); 18 ("Cross-Motion"); 18-1 ("Memorandum").

For the following reasons, Plaintiff's Motions are denied, Defendant's Motions are denied, and Plaintiff's Amended Complaint is dismissed under 28 U.S.C. § 1915(e)(2)(B).

## II. BACKGROUND

### A. Factual Background

Plaintiff, who is currently incarcerated in federal prison in Indiana, alleges that he approached Defendant in May 2011 to obtain his legal services. Am. Compl. ¶ 1. At that time, Plaintiff's mother sent Defendant a $300 personal check, which he cashed, in payment for his initial review of Plaintiff's case file. See id.

On approximately October 10, 2011, Plaintiff sent Defendant the first of several financial instruments that Plaintiff calls "Secured Notes" and alleges are secured by a $7,000,000 judgment in his favor in Illinois state court. Id. ¶ 2. Over the course of the next few months, Plaintiff sent Defendant several similar instruments, bringing the total amount Plaintiff sent to Defendant in this form to approximately $605,000. Id. ¶¶ 5-10. Although Defendant expressed concern over the validity and legality of the instruments at the time, Plaintiff insisted that they would be honored by a bank. See id. ¶¶ 4-5, 7.

In a letter dated December 20, 2011, Defendant told Plaintiff, "[i]f you can't come up with a retainer, using traditional methods, i.e. certified bank check, money order, certified check, just say so and end the madness." Id. ¶ 3. Defendant eventually sought Plaintiff's permission to cash a $1,000 "Treasury check" from Plaintiff that Defendant had held uncashed for approximately five or six months. Id. ¶ 5. Plaintiff give his permission, and Defendant wrote Plaintiff a letter on February 9, 2012, stating that the money "[w]ould go towards legal fees to date, and provide [Plaintiff] with a credit of $350 towards legal fees for administrative purposes including work detailed" in a previous letter. Id.

On Plaintiff's further insistence, Defendant presented some of the instruments to a bank for

inspection and was told that the instruments were invalid. Id. ¶ 8. Defendant sent Plaintiff a letter on approximately May 22, 2012, informing him that "until [Defendant] receive[ed] a certified bank check as [his] retainer, [he] will receive no more mail." Id. ¶ 12 (third and fourth alterations in original). Plaintiff insists that Defendant is obligated to protest the bank's refusal to cash the instruments and, in so doing, obtain an official "Notice of Dishonor in writing from the bank." Id. ¶ 9.

Plaintiff alleges that Defendant was obligated to accept the instruments as payment and that his failure to cash the instruments constitutes a breach of contract. Id. ¶¶ 4, 14. Plaintiff seeks compensatory damages in the amount of $606,300 plus fees and expenses. Id. ¶ 17.

**B. Procedural Background**

On May 29, 2012, Plaintiff filed his original Complaint in this action, a Motion for leave to proceed *in forma pauperis*, and the Inmate Authorization Form required by Northern District of New York Local Rule 5.4. Dkt. Nos. 1 ("Complaint"); 2 ("IFP Application"); 3. On June 1, 2013, the Court granted Plaintiff's IFP Application but directed Plaintiff to file an amended complaint within thirty days. Dkt. No. 4. Plaintiff filed his Amended Complaint on June 18, 2012. Am. Compl.

Defendant failed to file an answer to the Amended Complaint within the time allotted by the Federal Rules of Civil Procedure,[1] and on September 4, 2012, Plaintiff requested that the Clerk of the Court enter a default against Defendant. Dkt. No. 13. Two days later, on September 6, 2012, the Clerk of the Court filed an Entry of default in this action. Dkt. No. 14. Plaintiff subsequently filed his Motions for default judgment and for a writ of execution on September 20 and November

---

[1] Defendant still has not filed an answer to the Amended Complaint. See Dkt.

3

16, 2012, respectively. Dkt. Nos. 15, 16.

On December 4, 2012, Defendant filed his Cross-Motion and Motion to Stay. Cross-Mot.; Mot. to Stay. Plaintiff, in turn, filed Responses to the Cross-Motion on December 17 and 27, 2012. Dkt. Nos. 19, 21.

## III. LEGAL STANDARDS

### A. Rule 55(c)

Under Rule 55(c) of the Federal Rules of Civil Procedure, a "court may set aside an entry of default for good cause." Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte*. See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 386 (7th Cir. 2008) ("[T]he district court had the authority to set aside *sua sponte* an entry of default . . . for good cause."); Anheuser-Busch, Inc. v. Philpot, III, 317 F.3d 1264, 1267 (11th Cir. 2003) (holding that the district court could vacate the entry of default *sua sponte*); Rock v. AM. Express Travel Related Servs. Co., No. 08-CV-0853, 2008 WL 5382340, at *2 n.4 (N.D.N.Y. Dec. 17, 2008) (same). The decision to vacate an entry of default "under Rule 55(c) [is] left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) (citations omitted).

A district court should consider three criteria when determining under Rule 55(c) whether good cause exists to vacate an entry of default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Id. at 96 (citations omitted), cited in Peterson v. Syracuse Police Dep't, 467 F. App'x 31, 33 (2d Cir. 2012); Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001). In

4

determining willfulness, a district court must "find more than mere negligence on the part of the defendant in defaulting." Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010) (internal quotation marks and citation omitted). In determining prejudice, a district court "must consider the effect of the delay caused by the defendant's default, such as thwarting 'plaintiff's recovery or remedy . . . , result[ing] in the loss of evidence, creat[ing] increased difficulties of discovery, or provid[ing] greater opportunity for fraud and collusion.'" Id. (quoting 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2699, at 169 (3d ed. 1998)); accord Powerserve, 239 F.3d at 515. Finally, in determining the presence of a meritorious defense, a district court must decide whether a defendant has "present[ed] evidence of facts that, if proven at trial, would constitute a complete defense." Id. (quoting SEC v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998)). Because there is a "preference for resolving disputes on the merits," "good cause . . . should be construed generously" with any doubt as to whether a default should be vacated resolved in favor of the defaulting party. Id. at 96.

### B. 28 U.S.C. § 1915(e)

Section 1915(e) of Title 28 of the U.S. Code directs that when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). When reviewing a complaint under § 1915(e), a court may look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court should not dismiss a complaint if a plaintiff has pleaded "enough facts to state a claim to relief that is plausible

5

on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a court should construe the pleaded factual allegations in the light most favorable to a plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

A court has the duty to show liberality toward *pro se* litigants. See Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990). But this duty does not relieve a court of its responsibility under § 1915(e) to determine whether a claim is frivolous or fails to state a claim before permitting a plaintiff to proceed with an action *in forma pauperis*. "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," Nelson v. Spitzer, No. 07-CV-124, 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Id. at 325.

## IV. DISCUSSION

### A. Entry of Default

In his Cross-Motion, Defendant opposes Plaintiff's Motion for default judgment but makes no requests concerning the Clerk of the Court's Entry of default in this case. See Mem. at 1-4. Although Defendant has not moved to vacate the Entry of default, after considering the Amended

Complaint and Defendant's explanations for his failure to timely respond to it, the Court exercises its authority under Rule 55(c) to vacate *sua sponte* the Entry of default for good cause shown. See, e.g., Judson Atkinson Candies, 529 F.3d at 386; Anheuser-Busch, 317 F.3d at 1267; Rock, 2008 WL 5382340, at *2 n.4.

Of the three criteria the Court must consider in deciding whether to vacate the Entry of default, the third criterion weighs most heavily in Defendant's favor. As the Court discusses in detail *infra*, Plaintiff's legal arguments in support of his claim for breach of contract are frivolous, and Plaintiff fails to state a claim for relief for that and various other reasons. See infra Part III.C. These are certainly defenses that the Court may raise and consider on its own motion.

The second criterion also weighs in Defendant's favor for similar reasons. While Plaintiff would of course be prejudiced by vacatur of the Entry of default in that he would no longer be able to recover from Defendant unopposed, the Court's review of the Amended Complaint *infra* shows that Plaintiff is not entitled to recover from Defendant under either the law or the facts alleged therein. Thus, it is not Defendant's delay that "thwart[s]" Plaintiff's ability to recover but rather the deficiencies in Plaintiff's legal and factual allegations that preclude his recovery. Swarna, 622 F.3d at 142.

The first criterion also weighs in Defendant's favor, although less so than the other two criteria. Defendant claims that Plaintiff contacted Defendant by a letter in which Plaintiff "expressed his desire to avoid litigation, to resolve the parties' differences, and . . . again ask[ed] [Defendant] to assist [Plaintiff]." Mem. at 5. Based on this letter, Defendant "put aside the Complaint with the expectation that [Plaintiff] would be withdrawing [it], that an exchange of communication with [Plaintiff] would ensue, and [that] the parties would resolve this matter

7

between them." Id. In light of this explanation, the Court finds that Defendant's default is the product of his negligence in believing that Plaintiff would withdraw his Complaint rather than willfulness in thwarting Plaintiff's recovery. See Mem. at 1-4; Swarna, 622 F.3d at 142.

Accordingly, the Clerk of the Court's Entry of default is *sua sponte* vacated. Because the Court vacates the Entry of default, the Court denies as moot: (1) Plaintiff's Motion for default judgment; (2) Plaintiff's Letter Motion for a writ of execution; and (3) Defendant's Letter Motion to stay the writ of execution.

### B. Defendant's Motion to Dismiss

Defendant moves under 28 U.S.C. § 1915(d) for an order dismissing the Amended Complaint as frivolous. Cross-Mot. In so doing, Defendant makes several errors. First, the Court presumes that Defendant intended to move under § 1915(e) and not § 1915(d) because the latter subsection concerns only service of process in cases proceeding *in forma pauperis*. Second, a defendant cannot "move" under § 1915(e) to dismiss a case; rather, § 1915(e) imposes an affirmative and independent duty on courts to dismiss a case proceeding *in forma pauperis* if, at any time, a court determines that such a case is frivolous, fails to state a claim for relief, or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Defendant's Cross-Motion is therefore denied because it is brought improperly under § 1915 instead of an applicable Federal Rule of Civil Procedure.

Nevertheless, the Court reviews the Amended Complaint under § 1915(e)(2)(B) to determine whether Plaintiff may proceed with this action *in forma pauperis*.

### C. Review of the Amended Complaint

To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the

existence of an agreement[;] (2) adequate performance of the contract by the plaintiff[;] (3) breach of contract by the defendant[;] and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citations omitted).

The crux of Plaintiff's breach-of-contract claim is his contention that Defendant was obligated under a 1933 House Joint Resolution to accept Plaintiff's instruments as payment because those instruments are "legal tender." See Am. Compl. ¶ 4 ("'Every obligation heretofore or hereafter incurred . . . shall be discharged upon payment dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts.'" (quoting H.R. Res. 192, 73rd Cong. (1933))). This contention is frivolous, however, because it has no basis in law or fact.

"Legal tender" is defined under 31 U.S.C. § 5103 as "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks)."[2] Federal reserve notes are "[t]he paper currency in circulation in the United States," BLACK'S LAW DICTIONARY 688 (9th ed. 2009), or, more specifically, the green paper bills that we carry in our wallets. Section 5103 goes on to state that legal tender may be used to pay "all debts, public charges, taxes, and dues." Here, Plaintiff has failed to plead any facts showing that the instruments he drafted and provided to Defendant, and which Plaintiff calls "Secured Notes" in his Amended Complaint, fall within the kind of coins and currency covered by § 5103. See United States v. Spurling, No. 91-1038-C, 1992 WL 162969, at *2 (D. Kan. June 29, 1992) (holding that a promissory note is not legal tender under 31 U.S.C. § 5103). See generally Am. Compl. Therefore, Plaintiff has failed to demonstrate that

---

[2] Plaintiff cites to several other federal statutes and New York Uniform Commercial Code ("UCC") provisions in arguing that the instruments are legal tender. Am. Compl. ¶ 4 (citing 12 U.S.C. § 24; 31 U.S.C. § 321; 31 U.S.C. § 9303; NY UCC §§ 2-206, 2-606, 3-302, 3-501). None are relevant to this case, however, because none address what constitutes legal tender for payment of private debts.

either the 1933 Joint House Resolution or § 5103 apply to those instruments.

Even if Plaintiff had demonstrated that the instruments are legal tender under § 5103, Plaintiff's claim would still fail because the most reasonable interpretation of § 5103 is that it applies only to payments to creditors on preexisting debts. See Erik Lillquist & Sarah E. Waldeck, *Government Intervention in Emerging Networked Technologies*, 87 OR. L. REV. 581, 583 n.4 (2008) ("[T]he current understanding of the legal tender statute is that it applies only to preexisting debts and that parties to an exchange need not agree to take cash."); James Steven Rogers, *The New Old Law of Electronic Money*, 58 SMU L. REV. 1253, 1276 (2005) (explaining that the legal-tender statute should not apply to private sellers of goods or services). There is no federal statute mandating that a private business, person, or organization must accept legal tender as payment for goods or services. Absent a contrary state law, which Plaintiff has failed to identify, Defendant was therefore free not only to reject Plaintiff's proffered form of payment, but also to reject a cash payment had Plaintiff attempted to make one and to require some other form of payment, even goods or services in-kind.

With Plaintiff's primary argument stripped away, Plaintiff's allegations actually belie rather than establish an agreement between him and Defendant. If, as Plaintiff alleges, Defendant refused to accept Plaintiff's proffered instruments in satisfaction of his retainer fee, and Defendant was not required to accept those instruments as payment, no contract to provide legal services was formed.[3]

---

[3] Plaintiff's allegations suggest that Defendant's mere possession of the instruments makes him a holder of those instruments and, as a result, liable to Plaintiff for their purported full value. See generally Am. Compl. First, this argument has little to do with Plaintiff's claim for breach of contract, instead constituting some other, separate claim under the UCC or perhaps even in equity. Plaintiff has made it clear that his intention was to bring only a breach-of-contract claim, so despite Plaintiff's *pro se* status, the Court will not construe his Amended Complaint to allege any other claims. See id. ¶ 16 ("[P]lease allow [Plaintiff] to clarify his action, as his intent was for this to be a

That Defendant accepted certain monies paid through traditional means to perform certain limited tasks such as reviewing Plaintiff's case file does not change the fact that Plaintiff's allegations show that Defendant conditioned his representation on payment of his *retainer fee* by traditional means. See Am. Compl. ¶¶ 3, 12 (quoting Defendant's letters to that effect). The Court therefore finds that Plaintiff's allegations, even when construed liberally, do not establish an agreement between him and Defendant.[4]

Accordingly, Plaintiff's Amended Complaint is *sua sponte* dismissed under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be granted. Because Plaintiff cannot cure the legal deficiencies in his Amended Complaint through further amendment, the dismissal is with prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that a court need not grant leave to amend where amendment would be futile).

---

contract issue . . . [It is] a breach of simple contract claim . . . ."). Second, Plaintiff has failed to plead any facts supporting his conclusory allegations that the subject instruments are in fact valid promissory notes. Third, and most important, were the Court to accept Plaintiff's argument, it would permit Plaintiff to create any amount of liability in another person simply by sending that person instruments of dubious validity in amounts of his choosing (here, $605,000). The Court will not endorse such an absurd result and therefore rejects Plaintiff's argument entirely.

[4] The Court notes that the circumstances underlying Plaintiff's claim is this case are very similar to the circumstances underlying his claim rejected by the District Court in Miller v. Russo, 12 Civ. 3656, Dkt. No. 29 (S.D.N.Y. Dec. 23, 2012). In that case, Plaintiff sought to retain a law firm to represent him in the same appeal involved in this case by sending attorneys at the firm handwritten promissory notes in amounts far greater than requested. When the attorneys refused to accept the notes and declined to provide Plaintiff with legal representation, Plaintiff filed a complaint against the attorneys alleging breach of contract and requesting damages in the amount of the notes. The District Court granted the attorneys' motion to dismiss on the grounds that Plaintiff had failed to allege: (1) the terms of the alleged contract; (2) the specific tasks that the attorneys failed to carry out; and (3) damages. Here, in addition to the reasons stated above, Plaintiff's claim must also be dismissed for reasons similar to those identified by the District Court in Miller v. Russo.

11

### C. Plaintiff's Motion for an Accounting

Plaintiff "requests receipt and accounting of his sufficient security" or, alternatively, "that the security as posted . . . be returned to him, per operation of law, with an explanation as to why his post of security was dishonored." Mot. for Accounting. The security Plaintiff refers to in his Motion for Accounting allegedly was submitted with Plaintiff's earlier Letter Motion for a protective order, which was denied by the Honorable Christian F. Hummel, U.S. Magistrate Judge, by Text Order on April 24, 2013. Dkt. Nos. 31, 32.

The suggestion that Plaintiff submitted security to the Court is baseless, as Plaintiff has sent the Court no funds, but only barely legible photocopies of documents he alleges are evidence of his fifty-percent interest in a state-court judgment for $7,000,000. See Dkt. No. 31-1, Ex. 1. There is therefore nothing to account for or to return to Plaintiff, and Plaintiff's apparent attempt to extract a large sum of money from the Court is at best improper and at worst skirts dangerously close to extortion.[5] Plaintiff's Motion for Accounting is denied.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Clerk of the Court's Entry of default (Dkt. No. 14) is **VACATED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 15) for default judgment is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 16) for a writ of execution is **DENIED**

---

[5] Although Plaintiff does not specify the amount of the security he seeks returned to him, presumably it is either the $606,300 he seeks from Defendant or the purported $3,500,000 "value" of the documents he submitted to the Court.

**as moot**; and it is further

**ORDERED**, that Defendant's Letter Motion (Dkt. No. 17) for a stay of the writ of execution is **DENIED as moot**; and it is further

**ORDERED**, that Defendant's Cross-Motion (Dkt. No. 18) is **DENIED** as improperly brought under 28 U.S.C. § 1915; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 6) is **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 33) requesting a "receipt and accounting" of security allegedly submitted to the Court is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this Memorandum-Decision and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**IT IS SO ORDERED.**

DATED: May 20, 2013
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge